UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 12-30-DLB

CHARLIE COLEMAN, *et al.*            PLAINTIFFS

vs.

CAMPBELL COUNTY LIBRARY BOARD OF TRUSTEES      DEFENDANT

AND

GARTH KUHNHEIN, *et al.*            PLAINTIFFS

vs.

KENTON COUNTY LIBRARY BOARD OF TRUSTEES      DEFENDANT

* * * * * * * * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

These cases were removed from the Campbell and Kenton County Circuit Courts in February of 2012. Once removed, the Defendant Library Board or Trustees filed motions to dismiss on several grounds. Upon reviewing the merits of those motions, the Court, sua sponte, ordered supplemental briefing as to the applicability of the Tax Injunction Act to the claims raised by Plaintiffs. That briefing having now been completed (Docs. # 25, 28), and the Court having heard from counsel on September 25, 2012 and being otherwise sufficiently advised, the Court concludes that the Act applies and thus constitutes a jurisdictional bar. Because this Act deprives this Court of jurisdiction, these cases will be remanded to their respective originating state trial courts and all pending motions will be

1

deferred the presiding state court judges on remand.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 2012, Plaintiffs Charlie Coleman, John P. Roth, and Erik Hermes filed a Class Action Complaint with Jury Trial Demand and Declaration of Rights against the Campbell County Public Library Board of Trustees ("Campbell County Library") in Campbell Circuit Court. (Doc. # 11, 2:12-cv-30). In that Complaint, Plaintiffs alleged that they are residents and property owners in Campbell County, Kentucky, that they have paid property taxes to the Campbell County Library as set forth in their yearly county tax bills, and that the Campbell County Library has incrementally increased its ad valorem tax rate from $.38 to $.457 per $1,000 from 1994 through 2011 without complying with the provisions of KRS 173.790, which governs the increase or decrease of the tax levy. (Doc. # 11, at 3-4). As a result, Plaintiffs contend that they and the proposed class members are owed a refund of $2,218,497.83 for the year 2010, as well as for all other years where the tax has been improperly increased. (Doc. # 11, at 4).

Two days later, Plaintiff Garth Kuhnhein filed a nearly identical complaint against the Kenton County Library Board of Trustees ("Kenton County Library) in Kenton Circuit Court. (Doc. # 13-1, 2:12-cv-35). In that Complaint, Plaintiff alleged that he was a resident and property owner in Kenton County, Kentucky, that he has paid property taxes to the Kenton County Library as set forth in his yearly county tax bill, and that the Kenton County Library has incrementally increased its ad valorem tax rate from $0.82 to $1.13[1] per $1,000 from 2007-2011 without complying with the provisions of KRS 173.790, which governs the

---

[1] Plaintiff actually alleged that the Kenton County Library has incrementally increased its ad valorem tax rate from $0.82 to $0.113, although the Court presumes this to be a typographical error.

increase or decrease of the tax levy. (Doc. #13-1, at 1-2). As a result, Plaintiff contends that he and the proposed class members are owed a refund of $5,125,466.97 for the year 2011, as well as for all other years where the tax has been improperly increased. (Doc. #13-1, at 2).

Both actions were subsequently removed to this Court and then consolidated on March 2, 2012. In their Notices of Removal, Defendants asserted that this Court has jurisdiction based upon federal question and supplemental jurisdiction. (Doc. #1, 2:12-cv-30); (Doc. #1, 2:12-cv-35).

More recently, the Court ordered supplemental briefing on the applicability of the Tax Injunction Act to the claims raised by Plaintiffs. (Doc. #21, 2:12-cv-30). The parties subsequently completed that briefing and presented their positions during a telephone conference on September 25, 2012. (Docs. # 25, 28).

### III. ANALYSIS

The Tax Injunction Act ( "the Act") provides that "[t]he district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The purposes of the Act are "to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising." *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987). Simply put, the Act generally prohibits federal-court interference with state tax systems, unless the state offers no plain, speedy and efficient remedy for the wrong of which the aggrieved party complains.

Based upon the language and purposes of the Act, the United States Supreme Court has held that the statute operates to deprive a district court of jurisdiction to hear a challenge to a state tax system. *California v. Grace Brethren Church*, 457 U.S. 393, 396 (1982); *see also Arkansas v. Farm Credit Services of Cent. Arkansas*, 520 U.S. 821, 825 (1997) (describing the Act as a "jurisdictional rule" and a "broad jurisdictional barrier"). As a result, an action removed to federal court must be remanded to state court if the Act is applicable. *Soo Line R. Co. v. City of Harvey*, 424 F. Supp. 329, 331 (D.N.D. 1976) (citing *State Tax Commission v. Union Carbide Corp.*, 386 F.Supp. 250 (D.Idaho 1974)).

With framework in mind, the applicability of the Act primarily depends upon the relief requested by Plaintiffs, even though these purported class actions were removed by Defendants. Here, Plaintiffs set forth several causes of action, including conversion, unjust enrichment, and violation of 42 U.S.C. § 1983 based on an unlawful taking. Plaintiffs also seek a declaratory judgment that Defendants violated KRS 173.790 by assessing and collecting ad valorem taxes without following the petition requirements of the statute[2] and request the following relief:

1. Mandatory injunctive relief requiring the libraries to issue refunds for taxes billed and collected in excess of the statutorily approved rate;

2. Mandatory injunctive relief preventing the libraries from increases their tax rates unless they comply with the provisions of KRS 173.790;

---

[2]KRS 173.790 reads, in pertinent part:

The special ad valorem tax rate for the maintenance and operation of a public library district created pursuant to KRS 173.710 to 173.800 before July 13, 1984, shall not be increased or decreased unless a duly certified petition requesting an increase or decrease in the tax rate of a specifically stated amount is signed by fifty-one percent (51%) of the number of duly qualified voters voting at the last general election in each county in the district.

4

3. Judgment and award of compensatory damages, in the form of refunds, with interest, against the libraries;

4. Declaratory judgment that KRS 173.90 governs the tax rate and the ability to increase and/or decrease said rate;

5. Prejudgment interest, court costs and attorney fees pursuant to 42 U.S.C. § 1983.

In light of the relief requested by Plaintiffs, the Act applies and thus compels this Court to remand these actions, unless Kentucky offers no plain, speedy and efficient remedy with respect to the alleged violation of KRS 173.790.

### A. Requested Relief

As noted, Plaintiffs request injunctions, a declaratory judgment, and refunds, as well as prejudgment interest, court costs, and attorney fees pursuant to 42 U.S.C. § 1983. This subsection, then, will address each type of relief requested and explain how these requests, both individually and collectively, bring these actions within the ambit of the Act.

### 1. Injunctions

On its face, the Act bars suits in federal court for injunctive relief in state tax cases. *See* 28 U.S.C. § 1341. Here, Plaintiffs seek two injunctions: (1) Injunctive relief requiring Defendants to issue refunds for taxes billed and collected in excess of the statutorily approved rate; and (2) injunctive relief preventing Defendants from increasing their tax rates unless they comply with the provisions of KRS 173.790. Even if the former request–to require Defendants to issue refunds–may be construed as simply a demand for a refund,[3] the latter request–to prevent Defendants from increasing their tax rates–is clearly

---

[3] There is "no substantive distinction between an action 'to enjoin retention' of taxes and an action for the refund of taxes." *Kistner v. Milliken*, 432 F. Supp. 1001, 1004 n.4 (E.D. Mich. 1977).

5

an attempt to enjoin the assessment, levy or collection of the ad valorem tax. Based on the statutory text, this Court cannot consider such relief (unless Kentucky offers no plain, speedy and efficient remedy).

### 2. Declaratory Judgment

Although perhaps not obvious from the face of the statute, the Supreme Court has held that the Act also bars suits for declaratory relief in state tax cases. *California v. Grace Brethren Church*, 457 U.S. 393 (1982); *see also Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943) ("[W]e are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure.").[4] This is because "Congress' intent in enacting the . . . Act was to prevent federal-court interference with the assessment and collection of state taxes." *Id.* at 411.

In these cases, Plaintiffs are seeking a declaratory judgment that Defendants violated KRS 173.790 by assessing and collecting ad valorem taxes without following the petition requirements of the statute; in a nutshell, they want this Court to declare that KRS 173.90 governs the tax rate and ability to increase and/or decrease said rate. Again, based upon the Supreme Court's interpretation of the Act, this Court cannot consider such relief (unless Kentucky offers no plain, speedy and efficient remedy).

### 3. Refunds

Similar to the Supreme Court's holding with respect to declaratory relief, it is

---

[4]Prior to the Supreme Court's decision in *Grace Brethren Church*, the Sixth Circuit reached the same conclusion in *Wyandotte Chemicals Corp. v. City of Wyandotte*, 321 F.2d 927 (6th Cir. 1963). *See King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976) (discussing *Wyandotte Chemicals Corp.*).

generally recognized that federal suits for state tax refunds are also barred by the Act. *See Wright v. Pappas*, 256 F.3d 635 (7th Cir. 2001); *Marvin F. Poer & Co. v. Counties of Alameda*, 725 F.2d 1234 (9th Cir.1984); *Cities Service Gas Co. v. Oklahoma Tax Comm'n*, 656 F.2d 584, 586 (10th Cir.1981); *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323 (5th Cir. 1979); *Kelly v. Springett,* 527 F.2d 1090 (9th Cir. 1975)*; Bland v. McHann*, 463 F.2d 21 (5th Cir. 1972); *see also Hibbs v. Winn*, 542 U.S. 88, 106 (2004) (stating that the Act's undisputed compass includes federal litigation to gain a refund of state taxes); *Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgmt. Dist.*, 166 F.3d 835, 840 (6th Cir. 1999) (holding that the Act barred a claim for reimbursement paid under a prior, repealed version of a statute because "[t]he idea that a federal court ordering reimbursement of revenue raised under a repealed statute is any less invasive of a state's fiscal affairs than an order of reimbursement of revenue under a current statute is illogical"); *but see Georgia Pacific Corp. v. Mendocino*, 340 F.Supp. 1061 (N.D. Cal. 1972); *Southland Mall, Inc. v. Garner*, 293 F.Supp. 1370 (W.D. Tenn. 1968); *Central Steel & Wire Co. v. Detroit*, 99 F.Supp. 639 (E.D. Mich. 1951). The primary justification for this interpretation was set forth by the United States Court of Appeals for the Fifth Circuit in *Bland:*

> Prior to the passage of § 1341 the Supreme Court had announced a policy of judicial restraint in matters of state tax administration. In *First National Bank v. Board of County Commissioners*, [264 U.S. 450 (1924)], the Court was faced with an action to recover the amount of certain state taxes. Taxpayer alleged the shares of its bank and other banks in the same county had been assessed upon a valuation grossly in excess of the value of shares in other banks in other counties of the state. The district court dismissed the action after sustaining a demurrer to the complaint. Reversal of that judgment was sought in the Supreme Court on the ground that "the taxes were assessed and collected in contravention of the due process and equal protection clauses of the Fourteenth Amendment. . . ." After discussing the adequacy of the state remedy the Court affirmed the judgment of the district court holding that it was precluded from reaching the merits of the complaint

7

because taxpayers had not availed themselves of an adequate state remedy. This case alone would seem to effectively preclude the action here for a refund if the state remedy is adequate.

In a later case, decided prior to the enactment of § 1341, the Court refused to enjoin the collection of state taxes, even though constitutional claims of invalidity were made where the state remedy was plain, adequate and complete. Matthews v. Rodgers, [284 U.S. 521 (1932)]. In *Rodgers* the Court gave two reasons for exercising such restraint:

The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.

Congress recognized and gave sanction to the judicial practice by the enactment of the predecessor to § 1341. Soon thereafter the Supreme Court was faced with an action for a declaratory judgment that a state tax was unconstitutional. Great Lakes Dredge & Dock Co. v. Huffman, [319 U.S. 293 (1943)]. Acknowledging that the statute did not expressly include declaratory relief, the Court concluded that it was unnecessary to inquire whether it could be so construed. Instead, the Court relied upon the principles expressed in Matthews v. Rodgers in concluding that where the state remedy is plain, adequate and complete it is the duty of federal courts to withhold declaratory relief, and to remit the taxpayers to the state courts with ultimate review in the Supreme Court.

First National Bank v. Board of County Commissioners, *supra*, clearly would leave taxpayers to their state remedy, if it is plain, adequate and complete. The cases involving anticipatory relief further expound upon the idea that in matters involving state tax law state remedies must be pursued where they are plain, adequate and complete. An action for a refund is an integral part of state tax administration. We see no reason to bifurcate the state remedy. Section 1341 compels the taxpayers to seek anticipatory relief through a plain, speedy and efficient state remedy. An ancillary claim for a refund should properly be joined with it.

Thus, based upon all of the foregoing we conclude that it is the duty of federal courts, in actions for the refund of state taxes, to defer to state administrative and judicial remedies where the state remedy is "plain, speedy and efficient."

463 F.2d at 27-28 (footnotes omitted); *see also Whitman*, 595 F.2d at 326-30 (reaffirming

*Bland* and rejecting the argument that it simply held that a federal court cannot entertain a claim for a refund when the there is also a request for injunctive relief).

*Bland* and the majority of courts correctly held that the Act also bars suits for refunds in state tax cases. As a result, the Court cannot consider the request for compensatory damages, in the form of refunds, against Defendants (unless Kentucky offers no plain, speedy and efficient remedy). This is particularly true considering that Plaintiffs have also requested injunctive and declaratory relief. *See Mandel v. Hutchinson*, 336 F.Supp. 772 (C.D. Cal 1971) (refusing to accept jurisdiction over a claim for a refund when the there was an attendant request for injunctive relief).

### 4. Prejudgement Interest, Court Costs, and Attorney Fees

In their final enumeration of requested relief, Plaintiffs seek prejudgment interest, court costs, and attorney fees pursuant to 42 U.S.C. § 1983. To be clear, in making this allegation, Plaintiffs seek interest, costs, and fees *in addition* to the other relief requested. Stated differently, Plaintiffs (presumably) also seek injunctive and declaratory relief, as well as refunds, based upon this statute.

This Court, though, cannot decline to consider all of the other causes of action and requested relief, yet allow Plaintiffs' civil rights action to proceed solely as to their ancillary claims for prejudgment interest, court costs, and attorney fees:

> [U]nder the . . . Act [an] injunction can only be granted in the State courts. For the Federal Court to accept jurisdiction over [an] ancillary claim . . . would frustrate the philosophy of undertaking only those cases in which the Court can give comprehensive relief, and would tend to generate a multiplicity of actions as well as a duplicity of work.

*Mandel*, 336 F.Supp. at 782 (footnote omitted); *see also Kiker v. Hefner*, 409 F.2d 1067 (5th Cir. 1969) (affirming dismissal in its entirety when a request for a refund was included as

9

ancillary to a suit for injunctive relief); *Gray v. Morgan*, 371 F.2d 172 (7th Cir. 1966) (same). Simply put, these purported class actions are exactly the type of matters both Congress and the Supreme Court have sought to prohibit federal courts from considering, and bifurcating Plaintiffs' various requests for relief would do more harm than good. Accordingly, this Court cannot and/or will not entertain the requests for prejudgment interest, court costs, and attorney fees (unless Kentucky offers no plain, speedy and efficient remedy).[5]

Although the Court ultimately resolves Plaintiffs' final enumeration with an eye toward judicial economy, the Court would be remiss to not at least acknowledge that federal courts may simply lack jurisdiction as to such claims. In *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981), the Supreme Court held that taxpayers are barred from asserting § 1983 actions against the validity of state tax systems in federal courts, unless there is no plain, adequate, and complete state remedy. Importantly, though, the Court relied upon the principle of comity rather than the Act in rendering this determination. *Id.*

Because the Supreme Court relied on the principle of comity, the Sixth Circuit has concluded that the *McNary* prohibition is waived when a city and/or state removes the action to federal court. *Howard v. City of Detroit*, 73 F. App'x 90, 94 (6th Cir. 2003); *see also Levin v. Commerce Energy, Inc.*, 130 S.Ct. 2323, 2336 (2010) ("If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal

---

[5] The decision to avoid bifurcating Plaintiffs' various requests for relief comports with the wishes of all of the parties. During the September 25, 2012 hearing, counsel for both Plaintiffs and Defendants requested that this Court, in deciding whether to retain jurisdiction or remand, ultimately keep all of the causes of action and attendant requests for relief in one court.

court force the case back into the State's own system.") (internal quotations omitted) (citation omitted).  However, *McNary*, much like the Act, is written in a mandatory fashion and thus can be read to mean that the Supreme Court has renounced jurisdiction over § 1983 actions seeking damages in state taxation cases when state law provides an adequate remedy:

> I cannot agree that this case, and the jurisdiction of the federal courts over an action for damages brought pursuant to express congressional authority, is to be governed by applying a "principle of comity" grounded solely on this Court's notion of an appropriate division of responsibility between the federal and state judicial systems.  Subject only to constitutional constraints, it is exclusively Congress' responsibility to determine the jurisdiction of the federal courts.  Federal courts have historically acted within their assigned jurisdiction in accordance with established principles respecting the prudent exercise of equitable power.  *But this practice lends no credence to the authority which the Court asserts today to renounce jurisdiction over an entire class of damages actions brought pursuant to 42 U.S.C. § 1983.*

454 U.S. at 117 (Brennan, J., concurring in the judgment) (emphasis added).  Furthermore, the Sixth Circuit's conclusion in *Howard* is based upon a tenuous premise: That the Supreme Court's determination that a state's sovereign immunity can be waived by state removal of an action to federal court supports the conclusion that *McNary* prohibition does not apply when an action is removed by the state.  *Howard*, 73 F. App'x at 94-95 (discussing *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002)).

In sum, notwithstanding the Court's refusal to bifurcate Plaintiffs' various requests for relief, the Court may simply be compelled to remand these requests if the *McNary* prohibition operates as a jurisdictional bar.  Of course, this potential alternative justification also presumes that Kentucky offers no adequate remedy.

### B.   Plain, Speed, and Efficient Remedy

Having determined that the Act deprives this Court of jurisdiction unless Kentucky

11

offers no plain, speedy and efficient remedy, at this juncture the Court would normally consider arguments from the party bearing the jurisdictional burden as to the efficacy of Kentucky remedies. However, Defendants have neither alleged nor argued that there is not an adequate remedy under state law, presumably because such an argument would run afoul of their primary contention in moving to dismiss. *See Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgmt. Dist.*, 166 F.3d 835, 837 n.1 (6th Cir. 1999) (declining to address whether there was an adequate remedy under state law because the party bearing the jurisdictional burden made no such argument). Specifically, Defendants sought dismissal because Plaintiffs failed to exhaust their administrative remedies prior to filing their lawsuits as mandated by KRS 134.590:

> No refund for ad valorem taxes, except those held unconstitutional, shall be made unless the taxpayer has properly followed the administrative remedy procedures established through the protest provisions of KRS 131.110, the appeal provisions of KRS 133.120, the correction provisions of KRS 133.110 and 133.130, or other administrative remedy procedures.

Simply put, Defendants cannot complain that Plaintiffs failed to pursue their state law remedies, and subsequently characterize those remedies as inadequate.

That being said, even though they do not bear the jurisdictional burden, Plaintiffs have asserted that Kentucky offers no plain, speedy and efficient remedy, as this position dovetails with their contention with respect to the merits. Contrary to Defendants, Plaintiffs have argued that the exhaustion requirements of KRS 134.590 do not compel dismissal. Plaintiffs, then, find themselves advocating for this Court's jurisdiction, even though it was Defendants who removed the action. Plaintiffs' position, though, is unavailing.

At the outset, Plaintiffs cannot credibly argue that Kentucky offers no plain, speedy and efficient remedy, as they initially filed their claims in state court. Setting this aside,

Plaintiffs have failed to establish that Kentucky offers no adequate remedy.

In *Nw. Airlines, Inc. v. Tennessee State Bd. of Equalization*, 11 F.3d 70, 72-73 (6th Cir. 1993), the Sixth Circuit succinctly outlined the Act's exception for inadequate state remedies:

> The Supreme Court has stated that this plain, speedy and efficient exception "appears to require a state-court remedy that meets certain minimal procedural criteria." *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512, 101 S.Ct. 1221, 1228, 67 L.Ed.2d 464 (1981). State procedures that call for an appeal to a state court from an administrative decision meet these minimal criteria, even if the taxpayer must pay under protest and sue for a refund, there is a two-year delay in resolving the case, and a judgment in favor of the taxpayer does not include interest accrued in the interim. *Id.* Additionally, district court jurisdiction may not be grounded on the substantive inadequacy of the state court remedy. *Id.* at 512, 514, 101 S.Ct. at 1228, 1230; *see also Huber Pontiac, Inc. v. Whitler*, 585 F.2d 817, 821 (7th Cir.1978) (futility of state court proceedings does not render remedy inadequate, even if plaintiff is faced with recent, dispositive state court opinion contrary to its position). Thus, there is a strong presumption against district court jurisdiction over claims seeking to enjoin state tax collection procedures.

Here, Plaintiffs' argue that KRS 134.590 prohibits them from stopping the imposition of an unlawful tax, as it requires them to make a yearly claim for a refund; they allege that it is not a plain, speedy, and efficient remedy, but rather a yearly ordeal for a nominal amount of money. Even assuming the exhaustion requirements of the statute apply, which Plaintiffs still fervently dispute, these bald assertions do not establish an infringement on the minimal procedural standard and ignores that the Sixth Circuit's directive that district court jurisdiction cannot be based upon substantive inadequacy. Without more, this Court cannot conclude that Kentucky offers no adequate remedy.[6]

---

[6]Plaintiffs also argue that Defendants' removal acknowledges a lack of a remedy. Defendants' removal, though, was based upon based upon federal question jurisdiction and supplemental jurisdiction. The removal had nothing to do with the adequacy of the remedy.

13

Because neither party has shown that Kentucky offers no adequate remedy, this Court is deprived of jurisdiction and this therefore compelled to remand to state court. This determination, though, has no bearing on the merits. Stated differently, this Court has not addressed whether KRS 134.590 applies to Plaintiffs' claims. With this in mind, the Court will defer all pending motions, including the motions to dismiss, to the presiding state court judge on remand.

## IV.   CONCLUSION

For the reasons stated herein, the Tax Injunction Act deprives this Court of jurisdiction over Plaintiff's claims. Accordingly,

**IT IS ORDERED as follows:**

(1)   The above entitled actions are **remanded to their respective originating state trial courts**;

(2)   All pending motions will be **deferred** the presiding state court judge on remand; and

(3)   This action be, and is hereby **dismissed and stricken from the active docket**.

This 27th day of September, 2012.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Covington\2012\12-30 MOO Remanding.wpd

14